FILED
2009 Jul-09  AM 11:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **KEDON NEWTON, ALEXANDER GAYLE, and DONNELL COLLINS** ) ) ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 5:07-CV-1178-VEH** |
| ) | |
| **CITY OF HUNTSVILLE, ALABAMA and DAVID C. SCHRADER, _et al_.** ) ) ) | |
| **Defendants.** ) | |

_____

**<u>MEMORANDUM OPINION</u>**

## I.   INTRODUCTION

This is a case brought pursuant to 42 U.S.C. § 1983.  Plaintiffs are three young

men who witnessed the Defendant law enforcement officers apprehend a fleeing

suspect.  The officers' struggle to arrest the suspect turned violent and many members

of the surrounding community gathered to watch the incident.  As described in greater

detail below, Plaintiffs ultimately were arrested and charged with disorderly conduct

for allegedly failing to disperse when ordered.  In the course of arresting Plaintiffs,

the officers kicked down the door of Plaintiffs' apartment in order to apprehend them.

Before the Court are the Motion for Summary Judgment of the City of

Huntsville (Doc. 40) and the Motion for Summary Judgment of the individual defendants, Michael T. Johnson, Donald W. Long, Gerry L. Walker, Christine L. McDaniel, Michael H. Walker, Benjamin A. Brewer, Matthew C. Ott, Marcus E. Moon, George E. Coleman, Jr., Stan Still, Jimmy G. Anderson, and David C. Schrader (the "Officers").  (Doc. 41.)  For reasons discussed below, the Court finds that the City of Huntsville's motion is due to be **GRANTED** and that the Officers' motion is due to be **GRANTED IN PART AND OTHERWISE DENIED**.

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden,

2

Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence

demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged

4

evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

### B.    Qualified Immunity

The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks and citations omitted). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id.* at 1357-58.

This is a two-part test. Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Next, the defendant must prove that he or she was "executing that job-related function." *Id.* at 1267. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity."

5

*Cottone*, 326 F.3d at 1358.

The Supreme Court has, until recently, required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under the *Saucier* test,  "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established."  *Cottone*, 326 F.3d at 1358 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). The "unlawfulness must be apparent" under preexisting law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

This rigid framework was recently made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 129 S. Ct. 808 (2009), in which the Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory."  Thus, "judges of the district courts and the courts of appeals

6

should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's recent modification of *Saucier's* analytical process, the substantive analysis remains unchanged; a government official is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan,* 502 U.S. 224, 227 (1991).

## III.   FACTUAL AND PROCEDURAL HISTORY[1]

On August 14, 2005, Officer David C. Schrader ("Schrader") and Officer Daniel Golden ("Golden") arrived at Coventry Apartments on Sparkman Drive in Huntsville, Alabama to serve an arrest warrant.  (Doc. 43, AF 1.)[2]   In the course of

---

[1]  These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]   The designation "AF" stands for admitted fact and indicates a fact offered by the moving party that the non-movant has admitted in written submissions on summary judgment, or by virtue of any other evidence offered in support of the case.  Whenever the non-movant has adequately disputed a fact offered by the movant, the court has accepted the non-movant's version.  The court's numbering of admitted facts (e.g., AF 1) corresponds to the numbering of the movant's Statement of Facts as set forth in Doc.  43 and responded to by the nonmovant in Doc. 45.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF 5.2) would indicate the second sentence of paragraph 5 of Defendants' Statement of Facts is the subject of the court's citation to the record.  Any other facts referenced by the parties that require further clarification are dealt with later in the Court's opinion.

serving the arrest warrant, Schrader and Golden discovered narcotics inside an apartment. (*Id.*; Doc. 42, Schrader Dep. at 21:9-1.) At some unspecified time, Investigator Jimmy G. Anderson ("Anderson"), Officer Donald W. Long ("Long"), and Officer Benjamin A. Brewer ("Brewer") arrived on the scene to provide assistance. (Doc. 43, AF 2.) Schrader and Golden also encountered Deshawn Anderson (a.k.a. "Gator") who gave a false identity to the officers. (Doc. 43, AF 1, 3; Doc. 42, Anderson Dep. at 15:2-6.) Gator was handcuffed and escorted from the apartment by Long. (Doc. 43, AF 3-4.)

Before Long could secure Gator in his patrol car, Gator broke free from Long and fled across the parking lot. (Docs. 43, AF 4-5; 42, Schrader Dep. at 24:7-8.) When fleeing, Gator exclaimed "You're going to have to beat me. You're going to have to kill me." (Doc. 42, Anderson Dep. at 24:13-16.) As he was running, Gator turned towards Long and Brewer, who were in Gator's vicinity, and attempted to ram Brewer with his shoulder. (Doc. 42, Long Dep. at 30: 6-7.) Long stopped Gator's flight by forcefully striking Gator's head with his baton. (Doc. 42, Long Dep. at 31:1-17.) Gator was handcuffed at this time and his pants were around his ankles. (Doc. 42, Long Dep. at 23:17-18, 46:9-11.) Four officers, Long, Schrader, Brewer, and Anderson, then got on top of Gator. (Doc. 42, Long Dep. at 34:3-8.) The four officers hit Gator numerous additional times. (Doc. 42, Anderson Dep. at 175:7-11.)

8

Meanwhile, Gator continued to struggle against the officers, resisting their efforts to control him.  (Doc. 42, Newton Dep. at 66:14-67:11.)

Plaintiffs Kedon Newton ("Newton"), Alexander Gayle ("Gayle"), and Donnell Collins ("Collins") were in Apartment 181, along with Kedene Newton, and overheard the commotion.  (Doc. 43, AF 7.)  At the time of this incident, they were college students at Oakwood University in Huntsville, Alabama. (Doc. 42, Collins Dep. at 13:5; Newton Dep. at 29:20-30:4; Gayle Dep. at 12:1-8.)  Gayle was cooking, Newton was studying, and Collins was talking on the phone; Newton and Collins had just finished reviewing a practice test for medical school entrance exams.  (Doc. 42, Collins Dep. at 27:20-14; Gayle Dep. at 52:23-53:1.)  Also in the apartment were Kedene Newton, Kedon Newton's sister, and Theresa Kirkland, a friend.  (Doc. 43, AF 7.)

Hearing a noise, the group came out onto the second-floor balcony and observed the struggle with Gator. (Doc. 43, AF 7; Doc. 42, Collins Dep. at 49:18-50:7.)  Plaintiffs were almost directly above and slightly to the right of the area where Gator was resisting the officers.  (Doc. 14, AF 8.)  Two unidentified female observers on the ground level were yelling for the officers to stop; they yelled things such as "leave him the fuck alone!" and "get the fuck off him!" to the officers.  (Doc. 42, Newton Dep. at 35:9-18; Kedene Newton Dep. 62:19-22; Long Dep. at 35:19-36:7.)

9

The officers eventually brought Gator to the squad care and two of the officers proceeded towards the screaming women on the ground level. (Doc. 42, Collins Dep. at 41:6-18; Doc. 43, AF 15.) Additional people began emerging from their residences to observe the altercation. (Doc. 43, AF 12.) In total, approximately twenty-five people watched the incident, scattered in various places and near the apartment building. (Doc. 42, Newton Dep. at 80:12-17; Gayle Dep. at 73:21-74:3.) The two women were protesting Gator's arrest and screaming "Get off him." (Doc. 43, AF 19.) They also yelled at the Plaintiffs, stating "Are you seeing this?," "Do you guys see this?," and "Are you recording this?" (Doc. 43, AF 20.) Schrader and Brewer told the women to stop screaming and instructed them to leave the area, but they did not comply. (Doc. 43, AF 21.) The two females started to run away and Schrader and Brewer caught them and placed them in handcuffs. (Doc. 43, AF 22.) Many residents of the apartment complex were standing outside of their apartments and people were chattering between themselves, but they were speaking conversationally and not yelling at the officers; no residents, other than the two previously discussed females made any attempt to approach the officers. (Doc. 42, Collins Dep. at 59:10-60:61:19.) As the two female onlookers were apprehended, Gator kicked out the patrol car window. (Doc. 43, AF 23.)

At least one call for assistance had been made over the radio, causing several

10

other officers to arrive at the scene in response, including two officers from the University of Alabama in Huntsville, Officer Karl Kissich ("Kissich") and Officer Jeff Kilpatrick ("Kilpatrick"). (Doc. 43, AF 26.)  Additionally, Officer Michael T. Johnson ("Johnson") and his trainee, Officer George E. Coleman ("Coleman") arrived on the scene. (Doc. 43, AF 2.1.)  As soon as Johnson arrived, he told everyone, including Plaintiffs, to go inside. (Collins Dep. at 52:3-5, 54:7-11; Newton Dep. at 114:3-8.) Kedene Newton Dep. at 73:22-74:2.)  Plaintiffs complied with this command immediately. (Doc. 42, Newton Dep. at 128:20-129:2; Kedene Newton Dep. at 128:7-17; Gayle Dep. at 131:8-22.) This was the only time that Plaintiffs had been directed to go inside. (Doc. 42, Collins Dep. at 56:19-57:2.)

Johnson then approached Schrader and asked what was going on. (Doc. 43, AF 31.) Schrader told Johnson that Plaintiffs had been yelling and screaming and that they had refused his earlier commands to go inside; Schrader stated that the Plaintiffs needed to be arrested for action prior to Johnson's arrival. (Doc. 42, Johnson Dep. at 102:1-103:21.) Schrader, along with Long, also explained that the Plaintiffs had seen the fight with Gator; the officers also stated that Plaintiffs did not like the force used at the end of the incident. (Doc. 42, Johnson Dep. at 339:13-340:5.)

Having witnessed the incident with Gator, Plaintiffs' testimony would likely be considered by the Huntsville Police Department's Internal Affairs division. (Doc.

42, Johnson Dep. at 340:2–350:1.)  The credibility of a witness is considered as a factor in any investigation.  (Doc. 42, Anderson Dep. at 178:18-179:7.)  If Plaintiffs were yelling at the officers during their fight with Gator, it would have shown investigators that Plaintiffs' testimony was biased. (Doc. 42, Johnson Dep. at 351:14-18.)

After the officers conferred, Johnson ran up the stairs to Apartment 181, where the Plaintiffs had earlier entered when they obeyed Johnson's order, and kicked in the door to the apartment.  (Doc. 43, AF 39.)  Schrader, Coleman, Kissich, and Kilpatrick entered the apartment immediately thereafter.  (*Id.*) The officers shoved the female occupants out of the way and threw Plaintiffs down to the ground.  (Doc. 42, Newton Dep. at 157:14-22.)  An unidentified officer struck Newton in his face and on his side. (*Id.*)  As Gayle was taken to the ground, he asked why he was being arrested and an unidentified officer responded for him to "shut up."  (Doc. 42, Gayle Dep. at 180:12-18.)  Collins was handcuffed upright and aggressively thrown to the ground, landing face first.  (Doc. 42, Collins Dep. at 90:1-91:10.)  He was then kicked and kneed several times by unidentified officers.  (Doc. 42, Collins Dep. at 92:5-93:4.)  Collins pleaded with Johnson not to let the situation go any further and tried to explain that they did not want any problems with the police officers. (Doc. 42, Collins Dep. at 93:10-22.)

Anderson and Long also entered the apartment shortly after the Plaintiffs had been detained, believing that a fight was occurring within the apartment. (Doc. 42, Anderson Dep. at 94:13-22; Long Dep. at 60:13-21.)   Ultimately, between ten to thirteen officers entered the apartment.  (Doc. 42, Collins Dep. at 96:8-16.)   As Anderson entered, all of the officers turned to his attention and one indicated that the person in charge had arrived.  (Doc. 42, Collins Dep. at 97:21-98:18.)

Captain Anderson directed the inquiry against the Plaintiffs.  (Doc. 42, Collins Dep. at 96:18-15.)  He told Plaintiffs that one of them had to confess to saying "fuck the cops," or the entire group would be arrested and taken downtown. (*Id.*)  Everyone in the apartment denied saying such a phrase.  (Doc. 42, Collins Dep. at 80:3-16.)  No officer questioned Plaintiffs about anything other than who said "fuck the cops." (Doc. 42, Collins Dep. at 80:1-84:21; Newton Dep. at 157:14-23.)

Schrader told the Plaintiffs they were under arrest.  (Doc. 42, Schrader Dep. at 169:10-12.) Plaintiffs were then handcuffed, led to a patrol car, and escorted to jail. (Doc. 43, AF 43.)  Plaintiffs were charged with disorderly conduct; Officer Schrader signed each of the criminal complaints against Plaintiffs.  (Doc. 43, AF 45.) Ultimately, after at least three trial continuances, the disorderly conduct charges were *nolle prossed*.  (Doc. 43, AF 46.)

The instant case was filed on June 22, 2007.  In their Complaint (Doc. 1),

13

Plaintiffs brought two counts against the Defendants, one under 42 U.S.C. § 1983 for unlawful search and seizure, and one under Alabama state law for false arrest and false imprisonment.  The pending motions were filed on March 26, 2009, and the City of Huntsville and the Officers filed a joint brief in support of their separate motions. (Doc. 43.)  In their Opposition, Plaintiffs stipulated to the dismissal of their § 1983 claims brought against the City of Huntsville; to the dismissal of all individual defendants except Schrader, Long, Brewer, Anderson, Johnson, and Coleman; to the dismissal of Collins's § 1983 claims insofar as they allege warrantless entry and knock and announce claims; and to the dismissal of Collins's state law claims against the City of Huntsville.

## IV.   ANALYSIS

### A.   False Arrest under 42 U.S.C. § 1983[3]

#### 1.   Probable Cause and Arguable Probable Cause

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim.  The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir.2004)**;** *Marx v.*

---

[3]  Although Plaintiffs' Complaint contains one count based on Section 1983, for purposes of this motion, Defendants have divided their argument into False Arrest claims and Unlawful Entry claims, both of which arise under Plaintiffs "Search and Seizure" claims.

14

*Gumbinner*, 905 F.2d 1503, 1505-1506 (11th Cir.1990). Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir.1995)). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir.1992). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

"Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed." *Case v. Eslinger* 555 F.3d 1317, 1327 (11th Cir. 2009) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir.2002)).  "An arrest without probable cause is unconstitutional, but officers who make such an arrest are entitled to qualified immunity if there was arguable probable cause for the arrest. *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (citing *Lindsey v. Storey*, 936

F.2d 554, 562 (11th Cir.1991); *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir.1990)).    "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably <u>could</u> – not necessarily <u>would</u> – have believed that probable cause was present."  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (emphasis added); *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) ("Taking the facts of the case in the light most favorable to the plaintiffs, we conclude that the EPD officers had arguable probable cause to arrest Anderson[4] for disorderly conduct on March 24th, that is, that the officers could reasonably have believed that Anderson's actions on that date violated Alabama's disorderly conduct statute.") (footnote omitted); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' *i.e.*, the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.").

As the Eleventh Circuit explained in another false arrest case stemming from a charge of disorderly conduct under Florida law:

In making this determination, the central issue is whether, on the date of

---

[4]  Anderson was a traveling minister who admitted "that he was speaking loudly enough to be heard across the street, but not so loudly as to be heard over the noise of passing trucks." *Redd*, 140 F.3d at 1380.

> Gold's arrest, <u>the officers had arguable probable cause to believe that</u> <u>Gold had committed the offense of disorderly conduct</u>.  *See Von Stein* *v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990). The standard for arguable probable cause is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law."  *See Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir.1994).  <u>As we have emphasized before, arguable</u> <u>probable cause is distinct from actual probable cause</u>.  *See Post*, 7 F.3d at 1559.

*Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (emphasis added).  The

distinction between arguable versus actual probable cause is significant because it

"'gives ample room for mistaken judgments'" and for "reasonable error[.]" 121 F.3d

at 1446 (citations omitted); *see also Scarbrough v. Myles*, 245 F.3d 1299, 1302-03

(11th Cir. 2001) ("Arguable probable cause does not require an arresting officer to

prove every element of a crime or to obtain a confession before making an arrest,

which would negate the concept of probable cause and transform arresting officers

into prosecutors.").

Thus, even if a state official acts only "in an *arguably* reasonable way" based

upon preexisting law, then qualified immunity protects him.  *See, e.g., Marsh v.*

*Butler County*, 268 F.3d 1014, 1031 n.8 (11th Cir. 2001) ("[I]f a sheriff responds in

an *arguably* reasonable way to unsafe jail conditions, the sheriff will avoid suit

pursuant to the defense of qualified immunity.") (citation omitted); *see also id.*

("Qualified immunity is meant to allow government officials to act with 'independence and without fear of consequences' when the law is not clearly established.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).

2.    Disorderly Conduct

Having set forth the standard that the Officers must meet to warrant qualified immunity, the Court now turns to the offense which allegedly provided the Officers with probable cause.  Section 13A-11-7 of the Alabama Code specifically provides:

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

1) Engages in fighting or in violent tumultuous or threatening behavior; or

(2) Makes unreasonable noise; or

(3) In a public place uses abusive or obscene language or makes an obscene gesture; or

(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or

5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or

(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

(b) Disorderly conduct is a Class C misdemeanor.

18

Ala. Code § 13A-11-7 (emphasis added).   According to Defendants, Plaintiffs'
wrongful arrest claims fail because the Officers had arguable probable cause to arrest
Plaintiffs for disorderly conduct.   (Doc. 43 at 19.)   Thus, the Court now turns to
determine whether arguable probable cause existed for each of the Officers.

    i.  Schrader

  First, Defendants focus on Schrader, as they claim that he provided probable
cause for the remaining officers to arrest Plaintiffs. (*Id.*)   Specifically, Defendants
claim that Schrader faced a "volatile situation" where "people were yelling
obscenities at the police and causing a scene" and where plaintiffs had refused to
obey "lawful commands to go inside." (*Id.*)   However, this argument relies entirely
on disputed facts.   The Plaintiffs claim that no one in the apartment complex was
yelling and that the scene was generally calm in the building.   Further, taken in the
light most favorable to Plaintiffs, Schrader never instructed anyone to go inside and
Johnson issued the first command to Plaintiffs, which they promptly obeyed.   (Doc.
42, Collins Dep. at 56:19-57:2.)   In light of these facts, it is clear that Schrader lacked
arguable probable cause when he arrested plaintiffs for disorderly conduct.
Consequently, he is not entitled to qualified immunity on this ground.

    ii.  Long, Brewer, Anderson, Johnson, and Coleman

  Next, Plaintiffs argue that Long, Brewer, Anderson, Johnson, and Coleman

knew that Plaintiffs had committed no crime and they nevertheless failed to intervene. (Doc. 45 at 23.)   According to Plaintiffs, these officers were under a legal duty to prevent the Plaintiffs' false arrest and, by failing to intervene, they were complicit in Schrader's unlawful actions.   (*Id.*)   As authority for this proposition, Plaintiffs cite *Hadley v. Guitierrez*, which recognizes that an officer who is present at the scene and fails to protect an individual from another officer's excessive force is liable for such nonfeasance.   526 F.3d 1324, 1330-1331 (11th Cir. 2008).   Plaintiffs then state that "[t]his principle applies in both excessive force and false arrest cases."   (Doc. 43 at 22 (citing *Lepone-Dempsey v. Carroll County Com'rs*, 159 Fed. Appx. 916, 920 (11th Cir. 2005)).   However, neither of these cases apply to the current facts[5].   First, *Hadley* and the cases cited therein are excessive force cases and are not necessarily applicable to a false arrest claim.   In *Dempsey*, the Eleventh Circuit stated in an unpublished per curiam decision:

> Finally, Wagner argues that there was no clearly established duty at the time of Plaintiff's arrest for a law enforcement officer to intervene in order to stop an unlawful arrest; only a duty to intervene to stop the use of excessive force.  *See Priester*, 208 F.3d at 927. <u>Our precedent suggests, as Wagner points out, that the duty to intervene does not necessarily extend to every conceivable situation involving a constitutional violation</u>.  *See, e.g., Jones v. Cannon*, 174 F.3d 1271,

---

[5]  Prior to the time that this case came under submission, this Court considered and rejected an identical argument regarding a false arrest claim made by counsel for Plaintiffs in *Brown v. City of Huntsville*, No. 5:07-CV-1013-VEH.  (Doc. 46 at 50-51)

1286 (11th Cir.1999) ("There is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession in a police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct.").  However, given our holding in *Jackson*-that a claim of excessive force predicated on the unlawfulness of an arrest is subsumed into an unlawful arrest claim-we do not believe the district court erred in concluding that a duty to intervene in an unlawful arrest was clearly established.

159 Fed. Appx. at 920 (emphasis added).

*Hadley* and *Dempsey* are the only two cases that Plantiffs rely upon to show that these officers violated clearly established law with respect to Schrader's false arrest of Plaintiffs.  Because *Hadley* is simply inapplicable and because *Dempsey* does not engage in an extensive analysis of the fair warning requirement, post-dates the incident at issue here, and is unpublished and therefore is at most merely persuasive authority[6], this court declines to conclude that "a duty to intervene in an unlawful arrest was [indeed] clearly established" at the time of these officers actions/inactions with respect to Plaintiffs' (presumably) false arrest.

Plaintiffs also argue that Long, Brewer, and Anderson were present during all of the relevant events and that they therefore must have known that Schrader had manufactured probable cause.  (Doc. 45 at 23-24.)  They further argue that Johnson

---

[6] In *Baker v. Birmingham Bd. of Educ.*, the Eleventh Circuit held that unpublished opinions are only persuasive authority.  531 F.3d 1336, 1337 (11th Cir. 2008).

and Coleman were not entitled to rely on Schrader's probable cause determination because, taken in the light most favorable to the Plaintiffs, Schrader's story was false. (Doc. 45 at 24.)   Even assuming that these officers had a legal duty to prevent Schrader's false arrest, there is no evidence in the record that suggests that they <u>knew</u> Schrader's depiction of the events was untruthful or that, as Plaintiffs argue in their brief, the Officers conspired to arrest Plaintiffs in order to discredit their testimony in any future internal affairs investigation. (*See* Doc. 45 at 24-25.) At best, this theory of the case is merely conjecture and is wholly unsupported by any evidence in the record.

Additionally, Longer, Brewer, Anderson, Johnson, and Coleman were entitled to rely on the information provided by Schrader to determine probable cause.  An officer "may rely upon information received second-hand from other law-enforcement officers to determine the existence of probable cause."  *Nnandi v. Richter*, 976 F.2d 682, 686 (11th Cir. 1992).  "Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (noting that an officer is entitled to rely upon information received from an informant to establish probable cause) (quoting *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir.1996)).  Even taken in the light most favorable to the Plaintiffs, nothing in the record suggests that Long, Brewer,

22

Anderson, Johnson, and Coleman knew that Schrader's information was false.  Since an officer is entitled to rely on information received by an informant to make a warrantless arrest, *see Case*, 555 F.3d at 1327, information received from a fellow officer, *a fortiori*, is also reasonably trustworthy.

Thus, because Long, Brewer, Anderson, Johnson, and Coleman had no legal duty to prohibit the Plaintiffs' false arrest and because no evidence suggests that they knew that Schrader's statements were false, Long, Brewer, Anderson, Johnson, and Coleman are entitled to qualified immunity as to those claims.

### B.    Unlawful Entry under 42 U.S.C. § 1983

"Because 'the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,' it is 'a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008) (quoting *Payton v. New York*, 445 U.S. 573, 585-86 (1980)). "The rule that in-home arrests violate the Fourth Amendment unless they are accompanied by a warrant or an exception to the warrant requirement applies even when the arrest is accomplished under statutory authority and when probable cause is clearly present." *Id.* at 1240 (internal citations omitted). "[T]he existence of probable cause does not by itself validate a warrantless home arrest." *Bashir v. Rockdale County*, 445 F.3d 1323,

1327-28 (11th Cir. 2006).

Although there is a general presumption that a warrantless entry is unreasonable, a "specifically established and well-delineated exception[]" exists for warrantless searches made under exigent circumstances. *Katz v. United States*, 389 U.S. 347, 357 (1967). The exception for exigent circumstances "encompasses situations such as hot pursuit of a suspect, risk of removal or destruction of evidence, and danger to the arresting officers or the public." *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir. 1986).  The burden of meeting an exception rests with the party seeking it.  *United States v. Santa*, 236 F.3d 662, 669 (11th Cir. 2000) (citing *Chimel v. California*, 395 U.S. 752, 762 (1969)).

      1.    "Hot Pursuit"

Defendants first rely upon the "hot pursuit" exception to defeat Plaintiffs' unlawful entry claim.  (Doc. 43 at 24.)  However, they have failed to demonstrate, based on the facts taken in the light most favorable to the Plaintiffs, that this exception applies.

In *United States v. Santana*, 427 U.S. 38  (1976), the Supreme Court explained that "hot pursuit" requires some form of chase.  In *Santana*, the suspect was standing in the doorway of her house and the police intended to arrest her for distributing heroin. *Id*. at 40. The suspect retreated into the vestibule of her house, while holding

24

a brown paper bag, and the police officers followed and arrested her. *Id*. at 40-41. The Court characterized the facts of this case as "hot pursuit" and explained that while "hot pursuit means some sort of a chase, [ ] it need not be an extended hue and cry in and about the public streets." *Id.* at 43 (internal quotations omitted) (emphasis added). Although the chase was not extended, it still constituted a hot pursuit despite "the fact that the pursuit [ ] ended almost as soon as it began." *Id.* In finding that the "act of retreating into her house" could not "thwart an otherwise proper arrest," the *Santana* Court stated that the police had a "realistic expectation that any delay would result in destruction of evidence." *Id.*

Reiterating its requirement that hot pursuit requires a chase, in *Welsh v. Wisconsin*, 466 U.S. 740 (1984), the Supreme Court characterized a claim of hot pursuit as "unconvincing" when there is no "immediate or continuous pursuit of the [suspect] from the scene of the crime." *Id.* at 753. In that case, the police arrested the suspect in his home, without a warrant, for a noncriminal traffic offense. In finding no exigent circumstances, the Court also noted that there was no threat to the public, given that the suspect had already arrived at home and had abandoned his car at the scene of the accident. Further, it noted that "[w]hen the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with

25

a warrant issued upon probable cause by a neutral and detached magistrate." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).  The court also noted that, "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor."*Id.* at 753.

The Officers cannot rely upon "hot pursuit" to justify smashing down Newton and Gayle's apartment door.  Taken in the light most favorable to the Plaintiffs, Newton and Gayle complied with Johnson's order to go inside; they did not flee any officer because they had no reason to flee.  Deposition testimony demonstrates that a considerable amount of time elapsed between the time they complied with the order to go inside and the time that the Officers burst through the closed door of Apartment 181.  (*See* Doc. 42, Collins Dep. at 76:16-79:3.) It is clearly established that the "hot pursuit" exception requires a flight.  Further, under *Welsh*, smashing through Gayle and Newton's door was not justified by the relatively minor alleged infraction of disorderly conduct.  Additionally, "Fourth Amendment law [has] clearly established that the nonconsensual warrantless entry and search of a third party's home is *per se* unreasonable absent exigent circumstances." *Bates v. Harvey*,  518 F.3d 1233, 1249 (11th Cir. 2008).  Therefore, the Officers are not entitled to qualified immunity on the unlawful entry claims based on the "hot pursuit" exception.

26

2.    Exigent Circumstances

Next, Defendants argue that Anderson and Long were entitled to enter the apartment because they believed that a fight was occurring within the apartment. (Doc. 43 at 25.)   The exigent circumstances exception recognizes a "warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509 (1978).  It is well-established that exigent circumstances exist when failure to act may result in harm to police officers or the general public.  *See United States v. Reid*, 69 F.3d 1109, 1113 (11th Cir. 1995) (quoting *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983).  Plaintiffs do not point to any legal authority, clearly established or otherwise, to demonstrate that Anderson and Long were not entitled to enter the apartment out of concern for the safety of their fellow officers. Accordingly, Long and Anderson are entitled to qualified immunity as to Newton and Gayle's unlawful entry claims.

3.    Brewer

Finally, Defendants argue in a footnote that Brewer cannot be held liable for unlawful entry of Apartment 181, because he never entered the apartment.  (Doc. 43 at 25 n.11.)  Plaintiffs, in opposition, contend that even if Brewer did not enter the home, he is still liable because he did not act to prevent the other officer's unlawful

27

entry into the home.  (Doc. 45 at 23.)  However, as discussed *supra*, it is not clearly established by any binding authority in the Eleventh Circuit or patently obvious legal standard that a police officer has a legal duty to prevent another officer's unlawful entry into the home.  Thus, Brewer is entitled to qualified immunity as to Plaintiffs' unlawful entry claims.

### C.    State Law Claims

#### 1.    The Law of State-Agent Immunity

State-agent immunity, sometimes referred to as discretionary function immunity, derives from the Alabama Constitution.  As *Milton v. Espey*, 356 So. 2d 1201 (Ala. 1978) explains, "Section 14 of the  Alabama Constitution [is the provision] which declares sovereign immunity." *Id.* at 1201-02. "State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles*, 852 So.2d 117, 122 (Ala. 2002).

Regarding state officials, the *Milton* court further makes clear "Section 14 does not necessarily immunize State officers or agents from individual civil liability." *Id.* at 1203.  As the *Milton* court more specifically explained:

> "While the State itself may not be made a party to such action, it does not necessarily follow that its officers, Ray Bass, Claude Kelley and Governor Wallace, in their respective capacities, are also immune. The

essence of plaintiffs' complaint is that these officers of the State acted fraudulently, in bad faith, beyond  their authority, or acted under a mistaken interpretation of the law. Such allegations bring this case within those not protected by Section 14 of the Constitution. *Wallace v. Board of Education of Montgomery Co.*, 280 Ala. 635, 197 So.2d 428 (1967); *Engelhardt v. Jenkins*, 273 Ala. 352, 141 So.2d 193 (1962); *Finnell v. Pitts*, 222 Ala. 290, 132 So. 2 (1930)." ([e]mphasis added.)

*Milton*, 356 So. 2d at 1203.

More recently, the Alabama Supreme Court, in *Ex Parte Cranman*, provided a definitive restatement of state-agent immunity:

A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

(1) formulating plans, policies, or designs; or

(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

(a) making administrative adjudications;

(b) allocating resources;

(c) negotiating contracts;

(d) hiring, firing, transferring, assigning, or supervising personnel;  or

(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

792 So.2d 392, 405 (Ala. 2000).

After *Cranman*, the court identified the following legal framework for

addressing state-agent immunity issues:

This Court has established a "burden-shifting" process when a party raises the defense of State-agent immunity. *Giambrone v. Douglas*, 874 So.2d 1046, 1052 (Ala.2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. *Giambrone*, 874 So.2d at 1052; *Ex parte Wood*, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. *Giambrone*, 874 So.2d at 1052; *Wood*, 852 So.2d at 709; *Ex parte*

*Davis*, 721 So.2d 685, 689 (Ala.1998). "A State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.' " *Giambrone*, 874 So.2d at 1052 (quoting *Ex parte Butts*, 775 So.2d 173, 178 (Ala.2000)).

*Ex parte Estate of Reynolds*,  946 So.2d 450, 452 (Ala. 2006).

2.    <u>Analysis</u>

In their state law claims, Plaintiffs bring a single claim for "false arrest/false imprisonment" which is based on the same facts supporting Plaintiffs federal cause of action under § 1983.  Therefore, the Court must address whether the Officers are entitled to summary judgment as the Plaintiffs' state law claim by determining whether state agent immunity, as defined by *Cranman*, applies to the conduct at issue in this case.  As discussed below, the Court finds that Johnson, Coleman, and Schrader are not entitled to state agent immunity because they acted in violation of the United States Constitution and that Johnson, Coleman, Schrader, Anderson and Long are not entitled to state agent immunity because they acted beyond their authority in arresting the Plaintiffs.

i.    Johnson, Coleman, and Schrader violated the Constitution

In *Cranman*, when the Alabama Supreme Court restated the doctrine of state agent immunity, the court declared that the immunity does not apply "when the [United States] Constitution or laws of the United States. . . require otherwise." 792

So. 2d at 405.   However, in articulating its burden-shifting test for state agent immunity, the Alabama Supreme Court has only referred to the second *Cranman* exception (whether the officer acted in a manner that was willful, malicious, beyond his or her authority, or under a mistaken interpretation of the law). *See Giambrone*, 874 So.2d at 1052.   No cases from Alabama state that *Cranman* has been overruled or that *Cranman*'s exception to immunity for conduct that is contrary to the laws or Constitution of the United States is no longer good law.   Defendants have cited no such case and this Court has been unable to discover any such case independently. In light of this fact, the Court concludes that the first exception to immunity listed in *Cranman* still applies to this case; Defendants may not rely on state agent immunity where the Court has already found that the officer is not entitled to qualified immunity because the conduct at issue is "contrary to the laws or Constitution of the United States."   The Court, as discussed *supra*, has determined that Schrader is not entitled to qualified immunity with respect to Plaintiffs' § 1983 false arrest claims and that Johnson, Coleman, and Schrader are not entitled to qualified immunity with respect to Plaintiffs' § 1983 unlawful entry claims.   Thus, because this conduct is contrary to the laws or Constitution of the United States, Johnson, Coleman, and Schrader are not entitled to state-agent immunity under the first exception in

*Cranman*.[7]

> ii.   Johnson, Coleman, Schrader, Anderson, and Long acted beyond their authority.

The Court's finding that the remaining Officers did not violate the Constitution does not end the Court's analysis because, as explained in *Cranman* and its progeny, an officer alternatively is not entitled to state agent immunity "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." 792 So.2d 392, 405 (Ala. 2000). "A State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" *Ex parte Estate of Reynolds*, 946 So. 2d at 452.  Thus, the Court must determine whether any of the Officers are subject to this second exception to state agent immunity.  As discussed below, Johnson, Coleman, Schrader, Anderson and Long all acted beyond their authority and are therefore not entitled to state agent

---

[7] Defendants argue that, because the Court granted qualified immunity as to Plaintiffs § 1983 false arrest claims with respect to certain officers, the Court should not deny state agent immunity as to those officers based upon the denial of qualified immunity as to Plaintiffs' unlawful entry § 1983 claim.  (Doc. 50 at 4.)  However, the Court rejects this argument because Plaintiffs' state law "false arrest/false imprisonment" claim is not directly analogous to the § 1983 false arrest claim.  *See* Ala.Code 1975, § 6-5-170; *Upshaw v. McArdle*, 650 So. 2d 875 (Ala. 1994) ("A wrongful or false arrest will also support a claim for false imprisonment.").  Further, as discussed *infra*, the Court finds that the Officers acted beyond their authority in arresting Plaintiffs and are, therefore, not entitled to state agent immunity under *Cranman*'s second exception to immunity, which is sufficient in itself to deny state agent immunity.

immunity.

Sections 15-10-3 and -4 of the Alabama Code define those situations when a arrest of the type that occurred in the instant case, i.e., without a warrant and inside the arrestee's home, is lawful.

Under § 15-10-3:
(a) An officer may arrest a person without a warrant, on any day and at any time in any of the following instances:

(1) If a public offense has been committed or a breach of the peace threatened in the presence of the officer.
(2) When a felony has been committed, though not in the presence of the officer, by the person arrested.
(3) When a felony has been committed and the officer has reasonable cause to believe that the person arrested committed the felony.
(4) When the officer has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed.
(5) When a charge has been made, upon reasonable cause, that the person arrested has committed a felony.
(6) When the officer has actual knowledge that a warrant for the person's arrest for the commission of a felony or misdemeanor has been issued, provided the warrant was issued in accordance with this chapter. However, upon request the officer shall show the warrant to the arrested person as soon as possible. If the officer does not have the warrant in his or her possession at the time of arrest the officer shall inform the defendant of the offense charged and of the fact that a warrant has been issued.
(7) When the officer has reasonable cause to believe that a felony or misdemeanor has been committed by the person arrested in violation of a protection order issued by a court

34

of competent jurisdiction.
(8) When an offense involves domestic violence as defined by this section, and the arrest is based on probable cause, regardless of whether the offense is a felony or misdemeanor.

Ala. Code § 15-10-4 provides:

When arresting a person without a warrant, the officer must inform of his authority and the cause of arrest, except when the person is arrested in the actual commission of a public offense or on pursuit. In making a warrantless arrest, an officer has authority to break open an outer or inner door or window of a dwelling house if, after notice of his office and purpose, he is refused admittance.

As a necessary step in its analysis, the Court must determine who "arrested" the Plaintiffs. "A person is seized, arrested, or in custody 'only when, by means of physical force or a show of authority, his freedom of movement is restrained.'" *Craig v. Singletary*, 127 F.3d 1030, 1041 (11th Cir. 1997) (quoting *United States v. Mendenhall*, 446 U.S. 544, 555 (1980)). "An arrest is an officer's deprivation of another's freedom of locomotion to bring him to book." *Sheridan v. State*, 187 So.2d 294, 297 (Ala. App. 1966); *see also United States v. Robinson*, 650 F.2d 537, 539 (5th Cir. 1981) (the same). "In determining whether [an arrest] has occurred, the test is whether, in view of all the surrounding circumstances, a reasonable person would have believed they were not free to leave." Donald F. Samuel, Eleventh Circuit Criminal Handbook § 100 (citing *United States v. Baker*, 290 F.3d 1276 (11th Cir.

35

2002); *United States v. De La Rosa*, 922 F.2d 675 (11th Cir. 1991); *Craig v. Singletary*, 127 F.3d 1030 (11th Cir. 1997)). While Plaintiffs assert that "Schrader made the decision to arrest Plaintiffs" (Doc. 47 at 2), the salient question is who participated in the show of authority that restrained Plaintiffs, by breaking down Gayle and Newton's door, handcuffing the Plaintiffs, and taking them down to the station.  While the Defendants insinuate that only Schrader can be said to be the arresting officer (Doc. 47 at 2), the facts for purposes of this motion establish that Johnson, Coleman, Schrader, Anderson, and Long all participated in the arrest of Plaintiffs because they all entered the apartment and participated in the restraint of Plaintiffs.  However, Brewer did not enter the apartment, *see supra* at 23, and he did not participate in the show of force that deprived Plaintiffs of their freedom. Therefore, he did not arrest Plaintiffs.  Thus, because, Johnson, Coleman, Schrader, Anderson ,and Long all arrested Plaintiffs, the Court now turns to whether they acted within their authority in making this arrest.

In *Drill Parts and Service Co., Inc. v. Joy Mfg. Co.*, 619 So. 2d 1280 (Ala. 1993), the Alabama Supreme Court affirmed a circuit court's grant of summary judgment in favor of defendant officers who had arrested the plaintiff without a warrant and had used the warrantless arrest as further authority to search the plaintiff's business.  *Id.* at 1284.  The court affirmed the circuit court's grant of

36

summary judgment because it found that the arrest did not violate § 15-10-4 because the arrest occurred during the actual commission of an offense and because the officers had probable cause to believe that the plaintiff had committed a <u>felony</u> and had thereby violated § 15-10-4 and- 3.  *Id.* at 1285.

*Drill Parts* is distinguishable in the instant case.  First, the Johnson, Coleman, Schrader, Anderson, and Long arrested Plaintiffs based upon probable cause that Plaintiffs had committed a <u>misdemeanor</u> rather than a felony.  *See supra* at 18 (noting that disorderly conduct is a misdemeanor).  § 15-10-3 does not provide for such an exception for a misdemeanor, but it does provide authority for an arrest if an a public offense is committed in the presence of an officer.  *See id.* at § 15-10-3(a)(1).  Viewed in the light most favorable to Plaintiffs, no offense had been committed by them at the time of their arrest.  Therefore, Johnson, Coleman, Schrader, Anderson, and Long are not entitled to state agent immunity because the warrantless arrests were not authorized under Alabama law.

Additionally, Johnson, Coleman, Schrader, Anderson, and Long's authority to enter into Gayle and Newton's abode to make the arrests is qualified by § 15-10-4, which provides that an officer must inform the arrestee of his authority to make the arrest and must announce his presence.  He or she is only entitled to break open the door if refused admittance after announcing his or her presence. *Id.*  An exception to

this rule exists only if the officer pursues the arrestee after the commission of a public offense in the presence of the officer. *Id.* This exception does not apply in the instant case because, as discussed *supra*, none of the officers were in pursuit of Plaintiffs. In fact, Johnson unlawfully broke down Gayle and Newton's door–the remaining officers followed shortly thereafter–and arrested Plaintiffs without a warrant several minutes after Plaintiffs had obeyed a lawful order to return to their apartment. Unlike *Drill Parts*, under the facts of this case, the arrest did not occur during an ongoing public offense nor were the arresting officers in pursuit of Plaintiffs, who were inside the apartment. Further, Johnson, Coleman, Schrader, Anderson, and Long did not announce themselves or state their authority for arresting Plaintiffs. Because they violated the express provisions of Ala. Code § 15-10-4, Johnson, Coleman, Schrader, Anderson, and Long acted beyond their authority. Therefore, under *Cranman*, Johnson, Coleman, Schrader, Anderson, and Long are not entitled to state agent immunity as to Plaintiffs' state laws false arrest/false imprisonment claim.

3.    The City of Huntsville[8]

Defendants argue that, under Ala. Code § 11-47-190, municipal liability is limited to claims based on the "neglect carelessness or unskillfulness" of city agents,

---

[8] Plaintiffs stipulated that Collins's state law claims against the City of Huntsville are due to be dismissed. (Doc. 45 at 1.)

38

officers or employees.  (Doc. 43 at 29 (quoting Ala. Code § 11-47-190).)  Thus, "[t]his section absolves a municipality from liability for the intentional torts of its agents."  *Altamayer v. City of Daphne*, 613 So.2d 366, 369 (Ala. 1993) (citing *Scott v. City of Mountain Brook*, 602 So. 2d 893 (Ala. 1992)).  Newton and Gayle, however, contend that a denial of discretionary function immunity to an officer does not preclude liability for the city.  (Doc. 45 at 29.)  As authority for this proposition, they cite to *Borders v. City of Huntsville*, 875 So.2d 1168 (Ala. 2003).  However, *Borders* is distinguishable.

In *Borders*, the plaintiff appealed the circuit court's grant of a motion to dismiss on the ground that § 11-47-190 did not apply to intentional torts. However, the Alabama Supreme Court recognized that while the plaintiff had brought claims of false imprisonment against the city–an intentional tort–he had also stated that his allegations were based upon "neglect carelessness or unskillfulness."  *Id.* at 1183.  Having plead elements of a claim based on negligence, the Court found that the city was not entitled to immunity under § 11-47-90.  *Id.*

The current motion before the Court comes on the Defendants' motion for summary judgment and not a motion to dismiss.  Notwithstanding the fact that Plaintiffs' Complaint avers that "[t]o the extent that the conduct of the defendant Schrader and other officers was negligent or careless, the City of Huntsville is liable

39

for their conduct" (Doc. 1 at ¶ 24), no evidence in the record suggests that any of the officers were negligent. In fact, Plaintiffs argue throughout their brief that their arrest was the product of an <u>intentional</u> conspiracy among the Officers to discredit the Plaintiffs in any future investigation by the Huntsville Police Department's Internal Affairs Division. (*See* Doc. 45 at 26-27.) Thus, Plaintiffs cannot rely upon *Borders* to escape from the plain meaning of § 11-47-90. The City of Huntsville is therefore entitled to summary judgment on Newton's and Gayle's state law claims.

## V.    CONCLUSION

Therefore, in light of the above, the Court finds that the City of Huntsville's Motion for Summary Judgment is due to be **GRANTED**. Plaintiffs stipulated that any municipal liability claims based upon 42 U.S.C. § 1983 were due to be dismissed. Collins stipulated that his state-law claims against the City of Huntsville were due to be dismissed. Finally, the Court concludes that the City of Huntsville is entitled to immunity under Alabama law because it is not liable for the intentional acts of its officers.

The Officers' Motion for Summary Judgment is due to be **GRANTED IN PART AND OTHERWISE DENIED**. Plaintiffs have consented to dismissal of all claims against Gerry L. Walker, Christine L. McDaniel, Michael H. Walker, Matthew C. Ott, Marcus E. Moon, and Stan Still, and to the dismissal of Collins's warrantless

entry claims.   Further, Brewer, Johnson, and Coleman are entitled to qualified immunity with respect to Plaintiffs' § 1983 false arrest claims.  Long, Anderson, and Brewer are entitled to qualified immunity with respect to Gayle's and Newton's unlawful entry § 1983 claims.   Regarding Plaintiff's state law false arrest/false imprisonment claim, Johnson, Coleman, Schrader, Anderson and Long are not entitled to state agent immunity because they acted either beyond their authority, or in violation of the Constitution, or both.  In all other respects, the Officers' motion is due to be **GRANTED**.  A separate Order will be entered.

**DONE** and **ORDERED** this the 9th day of July, 2009.


**VIRGINIA EMERSON HOPKINS**
United States District Judge